Christopher A. WILSON,
Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 56A03–8610–CR–299.

Court of Appeals of Indiana,
Third District.

April 7, 1988.
Rehearing Denied May 18, 1988.

---

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Presiding Judge.

Appellant Christopher A. Wilson appeals from his conviction by a jury for child molesting, a Class B felony, and child molesting, a Class C felony, and his sentences of 10 and 5 years which are to run concurrently.

The facts show that on November 11, 1985 C.P., mother of the 12–year old victim, J.P., invited four people including the appellant over to the trailer she and Kelly Hess shared to watch a football game. Shortly after 9:00 p.m. Wilson crept into J.P.'s bedroom where she was asleep and began licking and fondling her vaginal area. J.P. screamed and ran out of the bedroom. C.P. reported the incident to the authorities and this prosecution and conviction ensued.

Appellant raises four issues for our review:

    I. Did Judge Molter err by reassuming jurisdiction over this case after he had earlier disqualified himself?

II. Did the trial court abuse its discretion by denying appellant's request for a psychiatric examination of the victim?

III. Did the trial court err by permitting the state to impeach appellant with a drug-related prior conviction?

IV. Did the trial court abuse its discretion by limiting the evidence concerning the alleged previous molestation of the victim by another person?

*I. Proper Judge*

Appellant argues that it was improper for Judge Molter to reassume jurisdiction in this case and rule on the state's motion to correct errors for two reasons. First, appellant contends that it is improper for a judge to assume jurisdiction over a case and make rulings in that case once another judge has presided at the trial of that case unless the judge presiding at the trial is shown to be unavailable. Second, appellant argues that Molter could not have reinstated himself following disqualification unless valid grounds affirmatively appear for reinstatement which do not appear on this record.

In the case at hand the record reflects that Temporary Judge Molter presided over several preliminary matters but prior to trial disqualified himself in order to avoid the appearance of impropriety because Judge Molter had been appointed public defender for Newton County. Permanent Temporary Judge Stephen Bower assumed jurisdiction and presided over the trial, sentencing and first motion to correct errors. Judge Bower partially granted appellant's motion to correct errors by overturning the jury's conviction of the Class B felony and the ten year sentence. However, Judge Molter reappeared and resumed jurisdiction to consider and then grant the state's motion to correct errors which was filed in response to the partial granting of appellant's motion to correct errors. The effect of Judge Molter's ruling was to reinstate the jury conviction of appellant on the Class B felony count and its accompanying ten year sentence.

■ Once a judge disqualifies himself from a case he cannot thereafter reinstate himself without revoking or setting aside his prior order of disqualification. The judge cannot attempt to rescind that disqualification and reinstate himself unless it affirmatively appears that valid grounds for such reinstatement exist. If no valid reason is shown he may not revoke or set aside his own disqualification. *State ex rel Mosshammer v. Allen Superior Court* (1965), 246 Ind. 366, 206 N.E.2d 139, 141–42; *Singleton v. State* (1977), 173 Ind.App. 606, 364 N.E.2d 1041, 1042–43.

■ However, disqualification of the judge may be waived by the consent of the parties and the judge. Thus, the rulings a disqualified judge makes are not void *per se*, but simply voidable. The disqualification of a trial judge must be seasonably raised. If a complaining party sits idly by and awaits the outcome of the proceedings after knowledge of a trial judge's disqualification, or when the law presumes such knowledge, he will be held to have waived the disqualification and consented to the ruling the judge makes. *Singleton v. State, supra,* 364 N.E.2d at 1043.

■ In this case appellant was aware Judge Molter had disqualified himself at the time of the disqualification. Nevertheless, at the hearing on the state's motion to correct errors, Wilson did not raise the issue that as a judge who had disqualified himself earlier Judge Molter could not rescind his disqualification without affirmatively demonstrating valid grounds for reinstatement. Therefore, Wilson has waived this portion of his argument for the purposes of appeal.[1]

Appellant's second argument is that Judge Molter should not have heard or ruled upon the state's motion to correct errors because Trial Rule 63(A) and Crimi-

---

1. Wilson did raise the disqualification issue in his own second motion to correct errors (the third such motion in this case) but because the objection was not raised at the hearing the presentation of the issue in the motion to correct errors was unseasonable.

nal Rule 9 require the judge who presides at the trial, if available, to rule on the motion to correct errors and other matters arising after the trial. Appellant argues that for Judge Molter to validly rule on the state's motion to correct errors, Judge Molter would have to affirmatively rule that Judge Bower was unavailable.

■ Indiana case law indicates that while Judge Bower should have been the judge to hear and rule on the state's motion to correct errors if he had been available, where the record is devoid of any indication that the trial judge is available and willing to make the necessary rulings, the rulings of the successor judge will not be disturbed for failure to specifically find that the first judge is unavailable.[2] *Richardson v. State* (1983), Ind., 447 N.E.2d 574, 575. In this case the record does not indicate that Judge Bower was available. There is no reversible error on this portion of the first issue.

Nevertheless appellant asks us to review the correctness of Judge Molter's reversal of Judge Bower's overturning the jury's conviction of Wilson on the Class B felony count. We will conduct such a review as it was not necessary to find that Judge Molter could not act as judge in this case in order to reach the question presented. We, as an appellate court, are in as good a position as any other judge who has not heard the evidence to review Judge Bower's actions as a thirteenth juror and appellant has properly preserved and raised the issue with us.

■ We find, however, that Judge Bower did not act as a thirteenth juror in this case. The thirteenth juror concept is found in TR 59(J)(7) and refers to a judge making a finding that the verdict was against the *weight* as opposed to the sufficiency of the evidence. In such cases the trial judge may only remand for a new trial and must make specific findings upon each material issue or element of the claim or defense upon which the new trial is granted. TR 59(J)(7); *State v. Kleman* (1987), Ind., 503 N.E.2d 895, 896; *Moore v. State* (1980), 273 Ind. 268, 403 N.E.2d 335, 336. Judge Bower did not find that the verdict was against the weight of the evidence but rather that the evidence was insufficient. Further he did not set a new trial and did not make the special findings which are required when the judge acts as a thirteenth juror, both of which are further indications that Judge Bower did not act as a thirteenth juror. Therefore, we will review this issue as a challenge to the sufficiency of the evidence.

When reviewing a challenge to sufficiency of evidence, we will consider only the evidence most favorable to the verdict with all reasonable inferences therefrom. We will not reweigh the evidence nor judge the credibility of the witnesses. The verdict will not be disturbed when there is substantial probative evidence from which the trier of fact could reasonably infer guilt beyond a reasonable doubt. *Hill v. State* (1987), Ind., 513 N.E.2d 1216.

■ In this case the challenge is only to the Class B felony child molesting count. IC 35-42-4-3(a) defines the crime as "a person who, with a child under twelve (12) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony." The allegation here is that Wilson committed deviate sexual conduct with J.P., an 11 year old child.

IC 35-41-1-9 defines "deviate sexual conduct":

"Deviate sexual conduct" means an act involving:

(1) a sex organ of one person and the mouth or anus of another person; or

(2) the penetration of the sex organ or anus of a person by an object.

---

2. In fact, both TR 63(A) and CR 9 specifically state that unavailability *shall* be determined by the successor judge. We do *not* hold that such an order concerning unavailability is optional. The rules require it. What we hold is that in situations such as this where the record does not suggest that the first judge was in fact available that the defect of the failure to properly make such an order is merely a technical defect and no reversal may be had on those grounds. *Tener v. Tener* (1980), Ind.App., 407 N.E.2d 1198, 1201.

J.P. testified that she was 11 years old at the time of the incident and that Wilson had licked her vagina. This testimony is sufficient to support a finding of child molesting, a Class B felony. We find no reversible error on this issue.

## II. Psychiatric Exam

Appellant contends that the trial court abused its discretion by denying his motion for a psychiatric examination of the complaining witness. We disagree.

■ A defendant has no right to subject a prosecuting witness, in a trial on a sex offense, to a psychiatric examination. The trial court may order such an examination where, within its sound discretion, the trial court determines such an examination is necessary. An appellate court will not disturb the trial court's ruling on this question absent a clear showing of an abuse of discretion. *Staton v. State* (1981), Ind., 428 N.E.2d 1203, 1205; *Holder v. State* (1979), 272 Ind. 52, 396 N.E.2d 112, 113; *Easterday v. State* (1970), 254 Ind. 13, 256 N.E.2d 901, 903; *Neaveill v. State* (1985), Ind.App., 474 N.E.2d 1045, 1049. In this case the trial judge noted in denying the motion that there was no indication that J.P. had any mental problems and we find that the record does not indicate any such problems. The record indicates nothing which would suggest the desirability of a psychiatric examination for J.P. The trial court did not abuse its discretion by refusing to order a psychiatric evaluation of J.P.

## III. Prior Conviction

Wilson's third argument is that the trial court erred by permitting the prosecution to introduce evidence that Wilson had been accused of conversion and a drug related offense as impeachment on cross examination. Wilson contends that he did not "open the door."

*Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210 limits the convictions for which a witness may be impeached for credibility to those involving infamous crimes (treason, murder, rape, arson, burglary, robbery, kidnapping, forgery and wilful and corrupt perjury) or crimes involving dishonesty or false statement. Drug convictions have specifically been held to be inadmissible for impeachment under the *Ashton* rule. *Hatchett v. State* (1987), Ind., 503 N.E.2d 398, 404. *Jones v. State* (1987), Ind.App., 512 N.E.2d 211, 214, n. 3; *Shannon v. State* (1986), Ind.App., 489 N.E.2d 976, 978. However, a defendant may "open the door" and waive the *Ashton* rule. The door may be opened by a direct examination question which invites an answer containing evidence of any criminal conviction. *Hopper v. State* (1986), Ind.App., 489 N.E.2d 1209, 1214; *Rutledge v. State* (1983), Ind.App., 452 N.E.2d 1039, 1042; *Fultz v. State* (1982), Ind.App., 439 N.E.2d 659, 661.

In *Hauger v. State* (1980), 273 Ind. 481, 485, 405 N.E.2d 526, 527 the defendant was asked if he had been convicted of several types of crimes including the crime he was charged with. The defendant denied having any such convictions. On cross examination the prosecution brought out that the defendant had been convicted of other crimes of the type *Ashton* would not normally permit. Our Supreme Court held that the defendant had opened the door. The court reasoned that by establishing that he had never been convicted of the crimes mentioned on direct examination, including the crime charged in the case, the defendant had elected to place his character in issue and was attempting to present himself as a person of good character, a person unlikely to have committed the charged crime. Once the defendant placed his character in issue in this manner, the prosecutor had a right to present evidence of his bad character and in that situation, so the *Hauger* court held, *Ashton* did not apply.

■ In the case at hand the same analysis applies. On direct examination counsel for the defense asked Wilson if he had ever been accused of doing anything like this before. Wilson denied that he had. On cross examination, over objection, the prosecutor brought out that Wilson had been convicted of conversion and drug dealing. No error was committed by allowing cross

examination on these matters. Wilson had opened the door and waived the *Ashton* evidentiary bar. The question asked concerning any accusations of prior sex offenses related to appellant's character. As in *Hauger,* by denying he had been accused of any previous sex crimes such as the one he was charged with, Wilson was attempting to present himself as a person of good character who was unlikely to have committed the charged crime. In this situation the *Hauger* holding permitted the prosecutor to present evidence of Wilson's bad character.

### IV. Evidence of Alleged Previous Molestation

Wilson's final argument is that the trial court's refusal to allow cross examination of a witness with regard to what J.P. told that person regarding a previous alleged molestation was prejudicial error because the questioning pertained to bias or prejudice. We disagree.

We agree that a witness' bias, prejudice or ulterior motives are always relevant at trial in that such evidence may discredit a witness or affect the weight of the testimony. The trial court, however, is granted discretion in the admission of such evidence. Evidence of bias is not collateral in nature and is not limited to the scope of direct examination. A party has a right to cross examine an opposing party's witness on matters which tend to impair that witness' credibility or to show his interest, bias, or motives. *Shanholt v. State* (1983), Ind.App., 448 N.E.2d 308, 316.

In this case, however, the question which the trial judge refused to permit concerned whether another little girl had told J.P. that she had been molested by the same party (not the appellant) who allegedly molested J.P. prior to the molestation in the case at hand. It was not an abuse of discretion for the trial court to refuse to permit such a question. We agree with the trial court that the question is irrelevant. In fact, Wilson *was* permitted to cross ex-

amine the witness on what J.P. told him concerning the alleged prior molestation.

Affirmed.

HOFFMAN and ROBERTSON, JJ., concur.